```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF GEORGIA
                   COLUMBUS DIVISION
```

KANEM SLEDGE,                       *

    Plaintiff,                     *

vs.                                 *
                                           CASE NO. 4:20-CV-170 (CDL)

NEXSTAR BROADCASTING, INC.,         *

    Defendant.                     *

## O R D E R

Kanem Sledge claims that his employer, Nexstar Broadcasting, Inc., discriminated against him because of his age and disability, in violation of federal law. Presently pending before the Court is Nexstar's summary judgment motion (ECF No. 11). As discussed below, the motion is granted because Sledge did not present any evidence to create a genuine fact dispute on his claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in

the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

In accordance with the Court's local rules, Nexstar submitted a statement of undisputed material facts with its summary judgment motion. *See* M.D. Ga. R. 56 (requiring statement of material facts supported by the record). Sledge, who is proceeding pro se after terminating his lawyer, received a notice regarding the significance of Nexstar's summary judgment motion. He filed an "opposition" to the summary judgment motion. The opposition is a response to Nexstar's statement of material facts, and it states that many of Nexstar's material facts are undisputed. Sledge asserts that a handful of material facts supported by his own deposition testimony are "disputed," but he did not cite any evidence to demonstrate a dispute. *See, e.g.,* Pl.'s Resp. to Def.'s Mot. for Summ. J. ¶¶ 21, 22, 42, 48, ECF No. 18. Sledge did not respond to some material facts at all. Therefore, the statement of material facts is deemed admitted pursuant to Local Rule 56. *See* M.D. Ga. R. 56 ("All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record

2

shall be deemed to have been admitted, unless otherwise inappropriate."). If Sledge did not specifically state that a fact statement was undisputed, the Court reviewed the Defendant's citations to the record to determine if a genuine factual dispute exists. *See Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008).

FACTUAL BACKGROUND

Nexstar is a television and media company that operates the WRBL news station in Columbus, Georgia. Sledge was a technical director for WRBL. Until January 5, 2020, his supervisor was Arthur Shipp. Sledge was scheduled for seven-hour shifts from 4:30 or 5:00 p.m. until 11:30 p.m., five days a week. Sledge ran the teleprompter for the 5:00 p.m. news broadcast, and he directed the 6:00 p.m. and 11:00 p.m. broadcasts. Sledge had to be on-site at the WRBL station to perform his job. Most days, Sledge had a break from 7:30 p.m. to 9:30 or 10:00 p.m. Pl.'s Dep. 71:14-24, ECF No. 13. There was usually a "bunch" of downtime between the 6:00 p.m. broadcast and the 11:00 p.m. broadcast. *Id.* at 72:13-22. Sledge was paid for 35 hours a week, though he usually did not work that many hours. *Id.* at 97:19-98:19.

In 2017, Sledge accepted a job as a full-time teacher in Chattahoochee County. He received approval for this employment under Nexstar's "Other Employment" policy, which required that

3

the second job would not conflict with or compete with the Nexstar job. Sledge understood that his commitment to his second job would not be an excuse for being tardy or absent at his Nexstar job.

In August 2019, Sledge was hospitalized for atrial fibrillation. While he was in the hospital, Sledge told his supervisor, Shipp, and a human resources officer named Vickie Holmes that he was in the hospital for "heart issues." *Id.* at 84:24-85:6. Sledge was released to return to work without limitations on September 5, 2019.

In late 2019, WRBL's general manager proposed a realignment of the station's news content and news production departments. Before the realignment, Shipp was the production supervisor, and he was responsible for managing the production team's execution of live newscasts and for marketing the station. Gene Kirkconnell, the station's news director, was responsible for managing the news content team's production of all news-related items. After the realignment, Shipp focused solely on marketing for the station, and Kirkconnell oversaw all production and news employees, including Sledge. Kirkconnell reviewed the production team's hours and skills to determine whether hours and positions should be adjusted. Kirkconnell Decl. ¶ 11, ECF No. 11-3. Sledge's technical director position was considered full-time, but it was identified as an under-utilized production

4

job because the downtime between the 6:00 p.m. and 11:00 p.m. newscasts was significant and his teaching job "impacted his availability to work and his dependability." *Id.* ¶¶ 12, 15. Thus, Kirkconnell decided to change Sledge's position to part-time. Shipp informed Sledge that his hours would be cut. After the realignment, Sledge remained responsible for directing the 6:00 p.m. and 11:00 p.m. newscasts.

After Kirkconnell became Sledge's supervisor, he started scheduling Sledge to begin work at 3:30 p.m. or 4:00 p.m. so he could consistently work on the 5:00 p.m. newscast. Pl.'s Dep. 106:5-22. Sledge was not on time for this shift. *Id.* During the same timeframe, Sledge was also late for several 11:00 p.m. newscasts and missed at least one 11:00 p.m. newscast in its entirety. *Id.* at 109:4-16, Kirkconnell Decl. ¶ 23. As he worked through the realignment, Kirkconnell began to reassign production jobs, reducing "hours of staff members who could not be counted on to arrive on time" and allowing other staff members to pick up more hours. Kirkconnell Decl. ¶ 25. He "took hours from everybody." Pl.'s Dep. 114:13-17. In February 2020, Kirkconnell reduced Sledge's hours "based solely on [Sledge's] lack of dependability and reliability." Kirkconnell Decl. ¶ 31. When Kirkconnell made the decision, he was not aware that Sledge had a disability or a medical condition. *Id.* ¶¶ 32-33.

5

In March of 2020, Sledge stopped reporting to work because of the COVID-19 pandemic, and he has not been back to work since March 26, 2020. In early April 2020, Kirkconnell reached out to Sledge and told him to stay safe and not to worry about rushing back to work. *Id.* ¶ 36. Later that month, Kirkconnell tried to contact Sledge several times to see if he wanted to work, but Sledge never responded. *Id.* ¶¶ 37-38. Kirkconnell did not terminate Sledge's employment and was ready to schedule Sledge for hours when he felt safe enough to return. *Id.* ¶ 39.

## DISCUSSION

### I. Sledge's ADA Claim

Sledge claims that he was discriminated against because had a disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117 ("ADA"). To prevail on his ADA claim, Sledge must prove that he was discriminated against "on the basis of disability." 42 U.S.C. § 12112(a). "Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Payne v. Goodyear Tire & Rubber Co.*, 760 F. App'x 803, 809 (11th Cir. 2019) (per curiam) (quoting *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001)). Sledge cannot establish that he was discriminated against "'because of' a disability unless the decisionmaker has actual knowledge of the disability." *Id.* (quoting *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1185 (11th

6

Cir. 2005)). Here, Kirkconnell stated under oath that when he made the decision to reduce Sledge's hours, he was not aware that Sledge had a disability or a medical condition. Sledge did not point to any evidence to create a genuine fact dispute on this point, and he did not point to any evidence that someone with knowledge of his heart condition was the true decisionmaker. Accordingly, Sledge's disability discrimination claim fails. For the same reason, any claim that Sledge's hours were reduced because he was regarded as having a disability also fails. *See* 42 U.S.C. § 12102(3)(A) (defining "regarded as having . . . an impairment" as being subjected to an action prohibited by the ADA "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity").

**II. Sledge's ADEA Claim**

In addition to his ADA claim, Sledge claims that his hours were reduced because of his age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634 ("ADEA"). To establish an age discrimination claim under the ADEA, a plaintiff must prove that his age was the but-for cause of an adverse employment action. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). In the absence of direct evidence of age discrimination, a plaintiff may proceed under the burden-shifting framework established in *McDonnell Douglas*

7

*Corp. v. Green*, 411 U.S. 792 (1973). *Sims*, 704 F.3d at 1332. The first step in that framework is to establish a prima facie case. To do that, Sledge must establish that he was a member of a protected age group (over 40), he was qualified to do the job, he was subjected to an adverse employment action, and he was treated less favorably than a younger person. *Horn v. United Parcel Servs., Inc.*, 433 F. App'x 788, 792 (11th Cir. 2011) (per curiam). Here, Sledge did not point to any evidence that he was treated less favorably than a younger person. Instead, he admitted that Kirkconnell cut everyone's hours. And, even if Sledge had established a prima facie case of age discrimination, Nexstar offered a legitimate nondiscriminatory reason for reducing Sledge's hours: Kirkconnell reduced the hours because Sledge did not reliably arrive for work on time. Sledge offered no evidence to establish that this proffered reason is pretext for discrimination. For all these reasons, Sledge's age discrimination claim fails.

### III. Sledge's Termination Claim

It is not clear from Sledge's complaint whether he is attempting to assert a wrongful termination claim. Nexstar argues that even if Sledge did try to assert such a claim, it fails because Sledge did not point to any evidence that he was terminated. The Court agrees. Kirkconnell stated that Sledge stopped reporting to work because of the COVID-19 pandemic.

8

Kirkconnell further stated that he did not terminate Sledge's employment and that he was willing to schedule Sledge for hours once he felt safe enough to return to work. Finally, Kirkconnell stated that Sledge never responded to Kirkconnell's messages about coming back to work. Sledge did not point to any evidence to dispute these facts or to establish that Nexstar terminated his employment, much less that it did so for a reason forbidden by federal statute.[1]

## CONCLUSION

For the reasons set forth above, Nexstar's summary judgment motion (ECF No. 11) is granted.

IT IS SO ORDERED, this 6th day of December, 2021.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[1] Additionally, Nexstar points out that Sledge did not allege that he was terminated in his charge of discrimination to the Equal Employment Opportunity Commission. *See* Compl. Ex. 1, Charge of Discrimination (Apr. 24, 2020) (alleging "continuing action" discrimination in the form of reduction of hours). A plaintiff seeking relief under the ADEA or the ADA must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC. *See* 29 U.S.C. § 626(d)(1) (stating that no ADEA civil action may be commenced unless an EEOC charge has been filed); 42 U.S.C. § 12117(a) (incorporating the Title VII's exhaustion procedures for ADA disability discrimination claims). So, even if Sledge's complaint could be read to assert a wrongful termination claim, it is administratively barred because such a claim is outside the scope of the EEOC charge. *See, e.g., Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (per curiam) (emphasizing that a judicial complaint is limited by the scope of the EEOC investigation that can reasonably be expected to grow out of the EEOC charge).